IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM M. LOMBARD, II          :
                                :
    v.                          :    CIVIL NO. CCB-00-3283
                                :
APPLIED GRAPHICS TECHNOLOGIES,  :
    INC.                        :
                   ...oOo...

**MEMORANDUM**

In this lawsuit, William Lombard seeks commissions and bonuses he claims to have earned while employed as a salesman by defendant Applied Graphics Technologies, Inc. ("AGT"). Currently pending is AGT's motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) or, in the alternative, to transfer to the U.S. District Court for the Western District of New York pursuant to 28 U.S.C. § 1404(a). The motion has been briefed fully, and no hearing is necessary. See Local Rule 105.6. For the reasons that follow, the motion will be denied.

BACKGROUND

AGT is a Delaware corporation with its principal place of business in New York. (Mot. to Dis., Schlegel Aff. ¶ 2.) From 1996-1999, Mr. Lombard was employed as a sales representative by AGT's Digital Imaging Systems Division, which is headquartered in Rochester, NY. That division sells technology used by businesses

1



for the storage, transmission, and reproduction of photographs. (Id., McCabe Aff. ¶¶ 2-3.) In this lawsuit, Mr. Lombard seeks commissions and bonuses he claims to have earned in the course of his employment in 1998.

While employed by AGT, Mr. Lombard worked out of his home in Maryland and traveled extensively to other parts of the country and abroad. (Id. ¶ 9.) Maryland income tax was deducted from his paychecks, and AGT complied with Maryland laws as they related to his employment. (Mem. Supp. Ans. at 2; Ex. 1.) Mr. Lombard claims that AGT provided him with office supplies and reimbursed him for other expenses incurred in maintaining his home office. (Id. at 1.) He states further that he called on customers in Maryland on AGT's behalf. (Id. at 2.) Other than Mr. Lombard, however, AGT maintained no employees in Maryland, owned no property there, and claims to have conducted no substantial business in the state. (Schlegel Aff. ¶¶ 3-4, 6.)

Mr. Lombard filed his complaint on September 29, 2000 in the Circuit Court for Howard County, Maryland seeking nearly $282,000 in unpaid commissions and bonuses. The case was removed to this court pursuant to a timely notice of removal. The defendant now moves to have the complaint dismissed for lack of personal jurisdiction or, in the alternative, to have the case transferred to the Western District of New York pursuant to 28 U.S.C. § 1404(a).

ANALYSIS

I. Personal Jurisdiction

The Fourth Circuit recently explained the standard applicable to a motion to dismiss for lack of personal jurisdiction:

> When, as here, a court's power to exercise personal jurisdiction over a non-resident defendant is challenged by a motion under Federal Rule of Civil Procedure 12(b)(2), 'the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence.' Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). Furthermore, when, as here, a district court rules on a Rule 12(b)(2) motion without conducting an evidentiary hearing or without deferring ruling pending receipt at trial of evidence relevant to the jurisdictional issue, but rather relies on the complaint and affidavits alone, 'the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge.' Combs, 886 F.2d at 676. 'In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.' Id.

Owens-Illinois, Inc. v. Rapid American Corp. (In re Celotex Corp.), 124 F.3d 619, 628 (4th Cir. 1997). See also Mylan Laboratories, Inc. v. Akzo, 2 F.3d 56, 59-60 (4th Cir. 1993); CoStar Group, Inc. v. LoopNet, Inc., 106 F. Supp.2d 780, 783-84 (D. Md. 2000).

Mr. Lombard, therefore, must establish a prima facie showing of this court's personal jurisdiction over AGT. In so doing, he must show that jurisdiction is proper under both the relevant

3

Maryland statute and the Due Process Clause of the Fourteenth Amendment. See Mylan Laboratories, 2 F.3d at 60; Ellicott Machine Corp., Inc. v. John Holland Party, Ltd., 995 F.2d 474, 477 (4th Cir. 1993). Under Maryland's long-arm statute, the court may "assert personal jurisdiction over (1) persons who directly conduct activities in Maryland; and (2) persons who conduct activities in Maryland through an agent." Mylan Laboratories, 2 F.3d at 61. See also Md. Code Ann., Cts. & Jud. Proc. § 6-103(b). Because, however, the Maryland Court of Appeals has interpreted the long-arm statute to extend to the limits allowed by the Constitution, the statutory and constitutional analyses frequently are "merged" into one. See id.; Ciena Corp. v. Jarrard, 203 F.3d 312, 317 (4th Cir. 2000) (citing Stover v. O'Connell Assoc., Inc., 84 F.3d 132, 135-36 (4th Cir. 1996)).[1] Thus, within the context of the Maryland long arm statute, Mr. Lombard must show that AGT has sufficient "minimum contacts" with Maryland "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S. Ct. 339, 342 (1940)).

---

[1] See Joseph M. Coleman & Assocs., Ltd. v. Colonial Metals, 887 F. Supp. 116, 118 n.2 (D. Md. 1995), for a discussion of the questions surrounding the "merger" of the long-arm statute and due process analysis.

4

"As the Supreme Court has noted, 'it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Young v. Fed. Deposit Ins. Corp., 103 F.3d 1180, 1191 (1997) (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958)). "The crucial issue is whether the defendant's contacts with the forum state are substantial enough that he reasonably could 'expect to be haled before a [Maryland] court.'" CoStar, 106 F. Supp.2d at 784 (quoting Shaffer v. Heitner, 433 U.S. 186, 216, 97 S. Ct. 2569 (1977)). "In other words, the defendant must have a 'substantial connection'" with Maryland. Young, 103 F.3d at 1191 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 2184 (1985)).

The jurisdiction asserted over the nonresident defendant may be specific, when the cause of action arises from the defendant's contacts in the forum, or general, in which case the defendant's "activities in the forum state must have been 'continuous and systematic.'" ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997) (citing Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-15, 104 S. Ct. 1868, 1872 (1984)). "[T]he threshold level of minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction." Id.

Mr. Lombard does not state explicitly whether he alleges specific or general jurisdiction. Because the court concludes that, at best, Mr. Lombard may be able to establish a prima facie showing of specific jurisdiction over AGT, it will not address general jurisdiction.

Mr. Lombard claims that AGT supplied him with office supplies and a computer and paid him in accordance with Maryland law. Further, he states that he called on customers in Maryland on behalf of AGT on a weekly basis and that other AGT employees met with him in Maryland. In effect, he claims to have been AGT's "Maryland office." (Mem. Supp. Ans., Lombard Aff. ¶ 4.)

In response, AGT contends that all decisions relating to Mr. Lombard's employment and the customers with whom he worked were made in New York and that AGT has no other contacts in Maryland. The parties disagree about the importance of an agreement made by AGT and Fuji Photo Film U.S.A., Inc. ("Fuji") involving the use of AGT products. AGT characterizes the deal as one between itself and Fuji that was negotiated through the companies' respective New York offices. Mr. Lombard claims to have made several visits to a Ritz Camera location in Beltsville, Maryland related to the contract. (Lombard Aff. ¶ 10.) Even if the contract was negotiated entirely in New York, AGT does not dispute that Mr. Lombard visited the Beltsville location during its negotiation or implementation. A significant portion of the

6

commissions Mr. Lombard seeks from this lawsuit stem from his work on that agreement.

Mr. Lombard alleges that AGT has both "directly conduct[ed] activities in Maryland," and "conduct[ed] activities in Maryland through an agent." Md. Code Ann., Cts. & Jud. Proc. § 6-103(b). He claims that the company conducted activities directly in the state by employing and paying him and providing him with office supplies and a computer. In addition, AGT employees visited Maryland in connection with Mr. Lombard's customers. (Mem. Supp. Ans., Lombard Aff. ¶ 4.) Also, Mr. Lombard claims that AGT acted through him in Maryland when he visited clients and performed consultations on the company's behalf.[2]

Mr. Lombard's activities in Maryland on behalf of AGT coupled with the manner in which the company supported him in

---

[2] AGT's reliance on the Maryland Court of Special Appeals' holding in <u>Zavian v. Foudy</u>, 747 A.2d 764 (Md. App. 2000), is not sufficient to discount these actions entirely. In that case, the court held that a sports agent's work in Maryland on behalf of several athletes could not be attributed to the athletes for purposes of asserting personal jurisdiction over them in Maryland state court. <u>Id.</u> at 770-71. AGT interprets that holding to mean that Mr. Lombard's activities in Maryland cannot be attributed to it for purposes of establishing personal jurisdiction. Mr. Lombard, however, was an employee of AGT. As such, he claims to have visited clients in Maryland on behalf of AGT, signed employment documents in Maryland, and functioned as a de facto Maryland office. (Mem. Supp. Ans., Lombard Aff. ¶¶ 3-4.) Also, he claims that AGT employees visited Maryland in connection with his work on AGT accounts. (<u>Id.</u> ¶ 4.) At least some portion of his work, therefore, amounted to the conduct of AGT's business <u>within</u> Maryland, not <u>from</u> Maryland. <u>See</u> <u>Zavian</u>, 747 A.2d at 770-71. Even under <u>Zavian</u>, those activities are attributable to AGT.

Maryland appear to constitute a purposeful availment of the laws and protections of the state. AGT, therefore, reasonably should have expected to be subject to suit in Maryland on issues related to Mr. Lombard's compensation. Thus, at this stage of the case, the court concludes that Mr. Lombard has produced evidence sufficient to establish a prima facie showing of personal jurisdiction over AGT in Maryland. Because the issue is not entirely free from doubt, however, AGT's motion to dismiss will be denied without prejudice pending further discovery and consideration of the evidence in connection with dispositive motions or, if necessary, trial.

II. Transfer

AGT also argues that the court should transfer the case to the Western District of New York pursuant to 28 U.S.C. § 1404(a). That section provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). It "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.' Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S. Ct. 2239, 2243 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622, 84 S.

Ct. 805, 812 (1964)). See also Vasconcellos v. Cybex Int'l, Inc., 962 F. Supp. 701, 705 (D. Md. 1997) (stating that a district court should "tak[e] into account considerations of convenience and fairness" in exercising its discretion to grant or deny a motion to transfer). Section 1404(a) establishes a "flexible and individualized" framework for analysis and "calls on the district court to weigh in the balance a number of case-specific factors." Ricoh, 487 U.S. at 29, 108 S. Ct. at 2243.

> The factors considered in ruling on a transfer motion include: (1) ease of access to sources of proof; (2) the convenience of parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the possibility of a view; (6) the interest in having local controversies decided at home; and (7) the interests of justice.

Alpha Welding and Fabricating, Inc. v. Todd Heller, Inc., 837 F. Supp. 172, 175 (S.D. W.Va. 1993) (citations omitted).

In support of its motion to transfer, AGT states that all relevant corporate witnesses are located in New York. (Mot. to Dis. at 9-10.) Further, it argues that, because many of those witnesses are no longer employed by AGT, only a court in New York would have the power to subpoena them. (Id.) Finally, AGT states that the terms of Mr. Lombard's employment and the company's agreement with Fuji were negotiated in New York. It, therefore, argues that this case is similar to ones in which courts have concluded that when "the Defendant resides in another district, the claims giving rise to litigation arose in that

9

other district, and most if not all the witnesses to the alleged misconduct reside or work in the other district, courts routinely order transfer." Willoughby v. Potomac Elec. Power Co., 853 F. Supp. 174, 176 (D. Md. 1994).

In response, Mr. Lombard argues that much of the case will revolve around documents which easily can be transported to Maryland, that witnesses from Maryland will be required to testify, and that AGT has not shown any particular hardship that would result from litigating the case in this state. (Mem. Supp. Ans. at 8.) He also argues that it would be both expensive and inconvenient for him to travel to western New York to pursue his claim. (Id. at 9; Pl.'s Resp. at 3.)

In weighing this evidence, the court concludes that neither side has made a persuasive showing of hardship. It is unclear how many witnesses will be required to testify and, other than the corporate officers who are in New York, where those witnesses may be located. There is no related litigation ongoing in New York. Cf. Vasconcellos, 962 F. Supp. at 707. Further, although the corporate decisions were made in Rochester, to the extent that Mr. Lombard claims commissions as a result of visits to clients in Maryland, it cannot be said fairly that the events giving rise to this action took place entirely in New York. Accordingly, the court concludes that, in this case, neither "the convenience of the parties," nor "the interests of justice"

warrant a transfer under 28 U.S.C. 1404(a) at this time. Because, however, the issue of jurisdiction is close, the court will deny the motion to transfer without prejudice, subject to renewal if, after further development of the evidence, the court is unwilling to exercise personal jurisdiction over AGT.[3]

A separate Order follows.

_June 19, 2001_
Date

_Catherine Blake_
Catherine C. Blake
United States District Judge

---

[3] If, after further development of the evidence, the court determines that the question of personal jurisdiction over AGT remains "a close one upon which reasonable minds could differ," it may follow the approach taken by Judge Motz in Coleman, 887 F. Supp. at 120, and The Harry and Jeanette Weinberg Found. Inc. v. ANB Inv. Mgmt. and Trust Co., 966 F. Supp. 389 (D. Md. 1997), and transfer the case pursuant to 28 U.S.C. § 1404(a) rather than inject the constitutional issue into this case unnecessarily.